**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LYNETTA LUCKETT, individually and as a representative of a class of similarly situated persons, on behalf of the WINTRUST FINANCIAL CORP. RETIREMENT SAVINGS PLAN, | Case No. 22-cv-03968 |
| Plaintiff, | Judge Mary M. Rowland |
| v. | |
| WINTRUST FINANCIAL CORP., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lynetta Luckett sued Wintrust Financial Corp. ("Wintrust") under the Employee Retirement Income Security Act of 1974 (ERISA), pleading various counts of breach of fiduciary duty for the corporation's selection and retention of an underperforming retirement fund. [1]. This Court granted Wintrust's motion to dismiss the original complaint and allowed Luckett leave to amend. [71]. Luckett filed an amended complaint with additional factual allegations about the Wintrust fiduciaries' decision-making process. [72]. Wintrust now moves to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [78]. For the reasons herein, the Court grants Wintrust's motion [78] and dismisses Luckett's claims with prejudice.

**I.     Background**

This Court previously reviewed facts surrounding Luckett's participation in Wintrust's Retirement Savings Plan (the "Plan"), as overseen by the Administrative Committee (the "Committee"). [71]. Those allegations remain the same in the Amended Complaint and the Court accepts them as true. Luckett adds more detailed allegations about the Committee's selection of the challenged investment, the BlackRock LifePath Index 2050 Fund. This Court accepts as true the additional following allegations from the operative complaint [72]. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

In a meeting on February 14, 2018, the Committee decided to replace the T. Rowe suite of TDFs in the Plan investment lineup with the BlackRock TDFs. [72] ¶ 35. The Committee's decision was informed by pitches from investor teams associated with the BlackRock and Vanguard funds. *Id*. The Committee then compared various aspects of those funds to each other, as well as the incumbent offering from T. Rowe. *Id*. The Committee also received data that tracked the funds' performance across periods of three and five years. *Id.* ¶ 37. The T. Rowe TDFs ranked in the top quartile of TDFs in most quarters dating back to January 2008, often outperforming the BlackRock TDFs. *Id*.

The February 14, 2018 meeting minutes reflect that the Committee focused on the different glide paths, or equity investment strategies[1], of the respective TDFs. *Id.* ¶¶

---

[1] The glide path of a TDF describes how the fund's investment manager adjusts its mix of assets over time. *See Baumeister v. Exelon Corp.*, No. 21-CV-6505, 2023 WL 6388064 (N.D. Ill. Sept. 29, 2023), at *4. TDFs usually have a "to retirement" or "through retirement" glide path. "A "to retirement" glide path generally assumes a participant will withdraw their funds at or shortly after retirement; in contrast, a "through retirement" investment generally assumes a participant will gradually withdraw their funds after retirement." *Abel v. CMFG Life Ins. Co.*, No. 22-CV-449-WMC, 2024 WL 307489, at *1 (W.D. Wis. Jan. 26, 2024). As such, a "to retirement" glidepath carries less risk as time goes on.

39-40. The Committee concluded that the "to retirement" glide path used by the BlackRock TDF best fit the needs of Plan participants. *Id.* ¶ 39. Most of the participants in the Plan, according to data also reviewed by the Committee, were relatively young and several decades away from retirement. *Id.* ¶ 41.

The Investment Policy Statement (IPS) governed the Committee's selection and monitoring of Plan investments throughout the Class Period. *Id.* ¶ 22. The IPS laid out various criteria and procedures for the selection, retention, and termination of investment options. *Id.*

Luckett repleads three counts against Wintrust under ERISA. Count I alleges breach of fiduciary duties of prudence and loyalty; Count II alleges failure to monitor fiduciaries and co-fiduciary breaches; and Count III alleges, in the alternative, that Wintrust is liable for knowing breach of trust. Wintrust moves to dismiss all three counts. [78].

## II. Legal Standard

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022); *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain

statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all reasonable inferences in the pleading party's favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586-87 (7th Cir. 2021) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

Finally, where a defendant asserts a facial challenge to subject matter jurisdiction and moves to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court applies *Twombly-Iqbal's* "plausibility requirement," *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015), and accepts as true "all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 381-82 (7th Cir. 2020).

### III. Analysis

Luckett's claim—that Wintrust failed to monitor the BlackRock TDFs before choosing it to replace the incumbent T. Rowe TDFs—remains central in the Amended Complaint. Luckett bolsters her contentions with meeting minutes from February 14, 2018, arguing that the Committee used a deficient process and failed to consider that

4

the BlackRock TDFs' relative underperformance and fit with Plan participants' needs.

Wintrust reasserts its argument for dismissal based on Luckett's failure to provide a "meaningful benchmark" to measure the BlackRock TDFs' performance. Wintrust also argues that the meeting minutes demonstrate that the Committee properly reasoned through its decision to select the BlackRock TDFs.

At the outset, Wintrust attaches extrinsic documents to its motion to dismiss and argues that the Court should consider them. Courts may only look to extrinsic materials to decide a 12(b)(6) motion, without converting the motion to one for summary judgment, when those materials are "referred to in the plaintiff's complaint and are central to [their] claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (quoting *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir.1998)). Here, the Court finds that of the documents attached by Wintrust, the February 14, 2018 Committee meeting minutes, [78-2] as well as the Investor Policy Statement, [78-8] are central to Luckett's claims. Luckett makes multiple references to both documents in the Amended Complaint, as the failure to monitor claim revolves around the February 14, 2018 meeting and the Committee's purported violations of the IPS. Accordingly, the Court will consider those documents.

### A. Count I – Duty of Prudence

ERISA requires benefit plan fiduciaries to act in accordance with certain standards of conduct. 29 U.S.C. § 1001(b). One such obligation is the duty of prudence, which includes "a continuing duty to monitor trust investments and remove

imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). For an imprudence claim to survive at the pleading stage, plaintiff must allege that (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022), reh'g denied, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022).

Here, in Luckett's words, the relevant inquiry is "whether it is reasonable to infer that the Plan fiduciaries failed to engage in an appropriate monitoring process" in selecting the BlackRock TDFs. [83] at 14. Wintrust contends that a lack of comparator funds, the BlackRock funds' relatively minimal underperformance, and evidence of the Committee's reasoning behind its selection all render Luckett's claims implausible. For the reasons explained below—and in large part aligned with our first opinion—the Court agrees with Wintrust.

### i. Whether the Committee considered the performance of the BlackRock TDF as compared to other funds ABC

Luckett alleges that the BlackRock TDF's underperformance relative to other funds (especially T. Rowe, the incumbent fund) should have alerted the Committee that selecting the BlackRock suite was imprudent. The duty of prudence, however, does not require a fiduciary to pick the best performing fund. *DeBruyne v. Equitable Life Assurance Soc'y of the United States*, 920 F.2d 457, 465 (7th Cir. 1990) ("[T]he ultimate outcome of an investment is not proof of imprudence."); *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006); *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018). Instead, courts use a standard that is "process-based, not outcome-based." *Martin v. CareerBuilder, LLC*, No. 19-CV-6463, 2020 WL 3578022,

6

at *4. "A Plan's mere underperformance is not actionable so long as the fund administrators acted prudently." *Id.* For a fund's underperformance to indicate imprudence, a plaintiff must show that the performance can be meaningfully compared to that of another "benchmark" fund. *Albert*, 47 F.4th at 581. Luckett offers three funds as comparators: the T. Rowe TDF, the Vanguard TDF, and the S&P target date index funds. None of these are adequate benchmarks.

This Court's earlier opinion reviewed why the T. Rowe and Vanguard TDFs cannot serve as comparators for the BlackRock funds' performance. [71] at 8. Each fund has either a different feature or management style that makes it inapt for comparison: the T. Rowe TDFs are actively managed, whereas the BlackRock TDFs are passively managed. *Id.*; [72] (Amended Complaint) at ¶ 48. The Vanguard TDFs, meanwhile, use a "through retirement" strategy whereas BlackRock TDFs are "to retirement" funds. [71] at 8. These are substantive differences. "[C]omparison . . . can be the thief of accuracy when it comes to two funds with separate goals and separate risk profiles." *See Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (declining to compare actively managed funds to passive managed funds because they have "different aims, different risks, and different potential rewards that cater to different investors.").

Luckett responds with what she must view as a "gotcha" card. The February 14, 2018 meeting minutes show that the Committee compared the BlackRock TDFs to both the incumbent offering, the T. Rowe TDFs, as well as the Vanguard TDFs before it decided to select the BlackRock suite. [78-2]. Luckett thus argues that the

7

Committee's conduct is something like a concession; that is, the Committee's act of comparing these funds means that the Court can also treat the funds as meaningful benchmarks. [83] at 16 ("[T]he Committee did not regard these purported differences as defeating comparability for purposes of considering TDF alternatives in 2018 when it selected the BlackRock TDFs.").

This argument is not persuasive. The Committee's working comparison was made in a different context than this Court sits in now. It is common sense, desirable even, for plan fiduciaries to weigh options with different goals and strategies before deciding to select or retain a fund. After all, "the reasonably prudent fiduciary standard requires that fiduciaries reach a well-reasoned decision after weighing the risks and benefits and considering other alternatives." *Cryer v. Franklin Res. Inc.*, No. 16-cv-04265-CW, 2018 WL 6267856, at *9 (N.D. Cal. Nov. 16, 2018); *see also Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022) ("[T]he circumstances facing an ERISA fiduciary will implicate difficult tradeoffs[.]"). The assessment that fiduciaries *must* do to select a product is different from the comparison courts *must* do when assessing whether plaintiffs have stated a plausible cause of action. As a policy matter, we want plan fiduciaries to engage in thorough comparisons without fearing liability for their due diligence. On the other hand, courts cannot, and should not, compare apples to oranges when determining a meaningful benchmark for performance. Neither the T. Rowe nor the Vanguard TDFs provide an appropriate benchmark, even though they were alternatives the Committee considered at the time of selection.

Luckett also alleges that the S&P target date indices are also an adequate benchmark.[2] The Court disagrees. Comparing index funds to managed funds is a textbook "apples-to-oranges" comparison. *Coyer v. Univar Sol. USA Inc.*, 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022). Unlike a TDF with an intentionally selected mix of assets, the S&P indices are a "composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs." *Hall v. Cap. One Fin. Corp.*, No. 12-2-CV-00857-MSNJFA, 2023 WL 2333304, at *7 (E.D. Va. Mar. 1, 2023). Thus, courts widely agree that the S&P indices cannot serve as a comparator for TDF performance. *See Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 164 (E.D.N.Y. 2022); *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 2417098 (N.D. Cal. June 14, 2021); *Tullgren v. Hamilton*, No. 12-2-CV-00856-MSNIDD, 2023 WL 2307615, at *7 (E.D. Va. Mar. 1, 2023).

Even if the funds named above were meaningful benchmarks, the BlackRock TDFs' underperformance was not severe enough to plausibly suggest that the Committee breached its duty of prudence. "[C]omparative underperformance must generally be "consistent" and "substantial" to support an inference of imprudence." *Gonzalez*, 632 F. Supp. at 163. Here, Luckett alleges that the BlackRock suite underperformed the T. Rowe and Vanguard funds over three and five-year time periods ending in the four quarters before the Committee's selection. She argues that

---

[2] Like her argument with regard to T. Rowe and Vanguard, Luckett contends that language in the IPS requires the Committee to periodically compare investment fund assets to a peer group. [83] at 16. As the S&P index funds are such a peer group, Luckett argues, the Court should also compare the BlackRock TDFs' performance to the S&P indices. The Court rejects this argument for the reasons it explained earlier. The Committee's comparisons at the time of selection/retention are fundamentally different from the Court's analysis now.

"no prudent fiduciary confronted with such data . . . could have considered and chosen a fund that was so demonstrably inferior." [83] at 21.

Still, accepting Luckett's allegations of performance as true,[3] [72] at ¶ 57, the BlackRock TDFs never underperformed the other funds by more than 3 percent in any given quarter. "This is not the type of substantial underperformance over a lengthy period that gives rise to a plausible inference that a prudent fiduciary would have removed these funds from the plan's menu of options." *Gonzalez*, 632 F. Supp. at 164 (dismissing imprudence claim where fund trailed benchmarks by .32% to 2.99% over three- and five-year periods); *Baumeister v. Exelon Corp.*, No. 21-CV-6505, 2023 WL 6388064, at *4 (N.D. Ill. Sept. 29, 2023) (collecting cases). Moreover, three and five-year horizons are relative blips in the timelines of plans that are meant to last four or five decades.[4] *See Dorman v. Charles Schwab Corp.*, No. 17-CV-00285-CW, 2019 WL 580785 (N.D. Cal. Feb. 8, 2019) (collecting cases dismissing claims of imprudence based on three to five years of underperformance).

Courts take a longer view of fund performance because a "prudent fiduciary may— and often does—retain investments through a period of underperformance as part of

---

[3] Wintrust disputes the accuracy of the data in the Amended Complaint, arguing that Luckett omitted performance data relating to a vintage of the BlackRock TDF that outperformed its peer funds. [79] at 15.

[4] Luckett relies on the IPS that guides Plan fiduciaries to place an investment on a "Watch List" for potential termination if the fund returns "[s]imultaneous bottom quartile performance versus [its] peer group on a 6-month, 1 year and 3 year basis." [78-8] at 4. Luckett argues that these monitoring intervals are shorter in time than her performance data, and the Committee accordingly should have followed the IPS guidelines and terminated the BlackRock TDFs. However, the IPS also states that "there are no hard and/or fast rules" that require termination. *Id.* Additionally, as Wintrust points out, Luckett does not allege that the Blackrock TDFs performed in the bottom quartile of its peer group on a six-month, one year, or three-year basis simultaneously. *See* [79] at 17-18 fn. 8. Thus, the Court cannot reasonably infer that the Committee failed to comply with the IPS.

10

a long-range investment strategy." *White v. Chevron Corp.*, No. 16-CV-0793 (PJH), 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016). Here, the February 14, 2018 meeting minutes reflect that the Committee prized the stability of the BlackRock TDFs in "all market environments." [78-2] at 4. Performance is not the only metric of a fund's viability. In this way, the Seventh Circuit recognizes that it may be "reasonable and prudent" for fiduciaries to "select conservative funds with long-term growth potential and [ ] stay with those mutual funds even during years of lower performance." *Jenkins*, 444 F.3d at 925-26.

"ERISA does not enable Plaintiffs to sue simply because a fund is not the top performer—instead, the allegations must show that the fiduciary acted outside the permissible range of prudent decisions." *Baumeister*, 2023 WL 6388064, at *4. Construing the facts in the light most favorable to Luckett, the BlackRock TDF did not perform poorly enough to demonstrate the fiduciaries' imprudence.

### ii. Whether the Committee properly considered Plan participants' needs

Next, Luckett alleges that the Committee selected the BlackRock TDFs based only on its glide path, though the strategy was unsuitable for Plan participants. Luckett contends that where a) the age of Plan participants utilizing the TDF offering "was heavily skewed towards younger employees," and b) many participants did not roll out their funds immediately upon retirement, the BlackRock TDF "to retirement" glide path did not maximize returns for these participants.

Wintrust correctly argues that the Committee's alleged "misunderstanding" is not grounds for an imprudence claim. First, it is clear from the February 14, 2018

11

meeting minutes that the Committee discussed various factors and arrived at the conclusion that *in addition to its glide path*, the low cost, stability, and conservative management of the BlackRock TDF all made it the best choice for participants. [78-2] at 5. Luckett's suggestion that the Committee had tunnel vision toward the fund's glide path is thus implausible. *Cf. Marshall v. Northrop Gunman Corp.*, 2019 WL 4058583, at *10 (C.D. Cal. Aug. 14, 2019) (allowing imprudence claim to survive motion to dismiss where there was nothing in the record to indicate that fiduciaries discussed whether a funds costs "outweighed the benefits, or vice versa).

More broadly, the Court is not permitted to serve as a Monday morning quarterback in judgment of the Committee's decisions. It may well be that the BlackRock TDF was not the best option for older Plan participants. That is why courts eschew an outcome-based approach and ask instead whether the fiduciary's decision-making process was deficient. *See, e.g., Albert*, 47 F.4th at 579. To this Court, the meeting minutes—which Luckett brushes off as mere "buzzwords"—demonstrate that the Committee made a thorough, reasoned choice to select a fund. A wrong choice does not by itself indicate imprudence. Luckett does not allege the typical indicia of imprudence recognized by courts, such as self-dealing or a conflict of interest. *See Gonzalez*, 632 F. Supp. at 165. Records embraced by Luckett's amended complaint show that the Committee selected the BlackRock TDFs with participants' best interests in mind.

The Court also takes note of two supplemental authorities filed by Luckett in support of her arguments, *Jones v. DISH Network Corp.*, No. 1:22-cv-00167- CMA-

12

STV, ECF No. 106 (D. Colo. Nov. 6, 2023) and *Kistler v. Stanley Black & Decker, Inc.*, No. 3:22-cv-966-SRU, 2024 WL 3292543 (D. Conn. July 3, 2024). Neither case changes the Court's reasoning in this matter. In both cases, the allegations of fund underperformance, taken alone, did not sustain the claim of imprudence. The same is true here, and with performance data that is more favorable to the BlackRock TDFs. In *Kistler*, for example, the court identified eleven instances of underperformance by more than 3 percent. 2024 WL 3292543, at *11.

More importantly, Luckett does not allege similar deficiencies in fiduciary decision-making as the plaintiffs in *Kistler* and *Jones*. There, the courts reviewed minutes from multiple meetings wherein the governing committees did not reference the relative underperformance of the funds, especially as required by their investment policy statements. *See Kistler*, 2024 WL 3292543, at *3, *14-*15 *and Jones*, 2023 WL 7458377, at *1, *3, *6. Here, meanwhile, the Court only reviewed records from one meeting. Those meeting minutes reflect that the Committee discussed the BlackRock TDFs (by name, too), weighed the funds' performance against other features like stability, management, and longevity, and considered peer funds. Luckett does not poke enough holes in this process to make it plausible that the Committee violated the IPS or made an overall imprudent decision.

### B. Breach of Duty of Loyalty, Ancillary and Derivative Counts, and Standing

As before, the Court dismisses Luckett's claim for breach of duty of loyalty because the Amended Complaint does not contain independent allegations of self-serving behavior at participants' expense. *See* [71] at 10-11. So too for Luckett's

13

derivative claims in Counts II (breach of duty to monitor and co-fiduciary liability) and III (knowing breach of trust) that stem from the breach of fiduciary duty. *Id.*

The Court need not resolve whether Luckett, as a former Plan participant, has standing to seek forward-looking injunctive relief. However, the Court notes that multiple authorities cited by Luckett hold that former participants in a benefit plan cannot seek prospective injunctive relief. *See Trauernicht v. Genworth Fin. Inc.*, No. 3:22CV532, 2023 WL 5961651, at *6 (E.D. Va. Sept. 13, 2023), at *5-*6; *Daugherty v. Univ. of Chicago,* No. 17 C 3736, 2017 WL 4227942, at *5-*6 (N.D. Ill. Sept. 22, 2017).

Luckett's fiduciary breach claims lack a plausible factual basis. She does not seek leave to amend, nor does she indicate that she can add additional allegations to bolster her claims. The Court thereby dismisses Luckett's claims with prejudice.

## IV. Conclusion

For the reasons stated above, the Court grants Wintrust's motion to dismiss all counts of the Amended Complaint. [78]. This case is dismissed with prejudice. Civil case terminated.

E N T E R:

Dated: August 14, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

14